IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02507-PAB

DIXIE BORN,

    Plaintiff,

v.

KATHLEEN SEBELIUS, Secretary of Health and Human Services,

    Defendant.

**ORDER**

    This matter is before the Court on plaintiff Dixie Born's complaint [Docket No. 1], filed on September 23, 2011. Plaintiff seeks review of the final decision of defendant Kathleen Sebelius, in her capacity as the Secretary of Health and Human Services (the "Secretary"), denying plaintiff's claim for Medicare Part B benefits under Title XVIII of the Social Security Act (the "Act"), 42 U.S.C. § 1395 *et seq*. The Court has jurisdiction to review the Secretary's final decision pursuant to 42 U.S.C. §§ 405(g), 1395ff(b).[1]

**I. BACKGROUND**

    Plaintiff was born on February 28, 1942 and is 71 years old. R. at 15. She has a history of hyperlipidemia, osteopenia, and periodontal disease.[2] R. at 44. Because of her medical conditions, Ms. Born's mandible has low bone density, she has nutritional

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

[2] Hyperlipidemia is a medical condition which leads to abnormally elevated levels of lipids. An individual with osteopenia typically has lower than usual bone mineral density. Periodontal disease is a disease that affects teeth supporting structures.

difficulties, as well as problems chewing and digesting food.[3]  In 1985, Ms. Born underwent surgery to have hydroxyapatite filler placed in her posterior mandible to prevent further bone loss caused by her medical ailments.  R. at 71, 73.  Although the hydroxyapatite filler ameliorated Ms. Born's condition, the hydroxyapatite added to her mandible slowly eroded.  R. at 73.  In 2004, Dr. Robert T. Spencer, Associate Professor of Medicine at the University of Colorado, Dr. Celinde Strohl, Ms. Born's internal medicine doctor, and Dr. William J. Garehime, D.D.S., opined that it was medically necessary for Ms. Born to undergo surgery to have dental implants for her mandible in order to reduce bone loss and optimize her nutritional intake.  R. at 42, 73, 115.

In 2007, Drs. Strohl and Spencer again endorsed dental implants as medically necessary to improve Ms. Born's health and nutrition.  R. at 43, 116.  In addition, Dr. Timothy Masterson, D.D.S., Ms. Born's family dentist, recommended dental implants to improve Ms. Born's ability to chew and digest food.  R. at 99.  Dr. Masterson opined that the bone grafts and hydroxyapatite would "improve [Ms. Born's] dental and medical health."  *Id*.  In addition, Kristi McLaughlin, Advanced Oral & Maxillofacial Surgery's Implant Treatment Coordinator, added that Ms. Born required bone grafts and dental implants for "optimal stabilization of [the] upper and lower prosthesis."  R. at 74.

Based on these recommendations, on June 20, 2007, August 1, 2007, and October 24, 2007, Dr. James R. Lessig and Dr. Masterson performed surgery on Ms. Born, which consisted of bone grafts and reconstruction of the mandible.  R. at 41, 68.

---

[3]The mandible is the lower jaw or lower jawbone.

2

The doctors performed Ms. Born's surgery at Advanced Oral & Maxillofacial Surgery's clinic, *id.* at 68, for a total cost of $36,325.00.  R. at 46.

In May 2009, Ms. Born submitted claims for Medicare payments to TrailBlazer Health Enterprises, LLC ("TrailBlazer"), a Medicare contractor, requesting reimbursement for the costs of the surgery and implants.  R. at 301-309; R. at 269. Specifically, Ms. Born submitted seven claims for jaw reconstruction (Current Procedural Terminology ("CPT") code 21248) and eight claims for bone grafts (CPT code 20900).  R. at 301-309; R. at 28.  TrailBlazer denied Ms. Born's claims, initially and on subsequent review, on the grounds that the surgery and implants were excluded from coverage as dental procedures under Medicare Part B.[4]  R. at 268-276.

On October 11, 2010, Ms. Born requested reconsideration of TrailBlazer's ruling from Q2 Administrators, the Medicare Qualified Independent Contractor ("QIC") in charge of her case.[5]  R. at 280-282.  In her request for reconsideration, Ms. Born argued that her surgeries were not routine dental procedures, but constituted medical treatment necessary to improve her overall health.  R. at 280.  On November 27, 2010, the QIC denied Ms. Born's claims on the grounds that services performed in connection with the care of teeth or structures directly supporting teeth, including treatment, removal, or replacement, are excluded from coverage under Medicare.  R. at 254.  The

---

[4]TrailBlazer initially upheld the denial of Ms. Born's request for coverage on April 27, 2010.  *See* R. at 284-288.  However, because of errors in the initial letter, TrailBlazer sent Ms. Born an amended letter on October 29, 2010.  R. at 268.

[5]Under the Medicare program, QICs perform independent reviews of beneficiaries' case files to determine whether the services claimed are covered under Medicare guidelines.  R. at 252.

3

QIC explained that, unlike other health related services, Congress explicitly excluded all dental services from Medicare coverage and did not limit this exclusion to "routine" procedures.  *Id*.  Moreover, the QIC noted that Ms. Born's treatment did not qualify under two exceptions to the general prohibition against coverage for dental services.  *See, e.g.,* Centers for Medicare & Medicaid Servs., Dep't of Health & Human Servs., *Medicare Benefit Policy Manual* ("MBPM"), Pub. 100-02, Chap. 16, § 140 (stating that Medicare coverage is available for "[t]he extraction of teeth to prepare the jaw for radiation treatments of neoplastic disease"), available at http://cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/bp102c16.pdf; Centers for Medicare & Medicaid Servs., Dep't of Health & Human Servs, *Medicare National Coverage Determinations Manual* ("NCD"), Pub. 100-03, Chap. 1, Part 4, § 260.6 (stating that Medicare coverage is available for oral examination services before a beneficiary undergoes kidney transplant to prevent risk of infection), available at http://cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/ncd103c1_Part4.pdf.  Because the QIC found that the dental services Ms. Born received did not qualify under these exceptions, it held that she was not entitled to Medicare coverage.  R. at 255.

On December 31, 2010, Ms. Born timely appealed the QIC's decision and requested an administrative hearing.  R. at 247-249.  On March 7, 2011, Administrative Law Judge ("ALJ") Bennett S. Engelman held a hearing at which Ms. Born testified.  R. at 24.  On March 16, 2011, the ALJ rendered a favorable decision to Ms. Born, concluding that her surgeries were covered under Medicare Part B because they did

not constitute dental services. R. at 25. In reaching this conclusion, the ALJ relied on documentation from Ms. Born's physicians who opined that the bone grafts and reconstruction of the mandible were not simple dental services, but rather necessary treatment to improve Ms. Born's overall health and ability to digest food. R. at 25. The ALJ reasoned that reconstruction of the mandible and the bone grafts were procedures similar to those identified in NCD, Chap. 1, Part 4, § 260.6. *Id*. Accordingly, the ALJ concluded that Ms. Born was entitled to coverage under Medicare Part B and ordered reimbursement for her dental services at the appropriate Medicare rate. *Id*.

On May 11, 2011, the QIC filed a referral to the Medicare Appeals Council (the "Council").[6] In its referral, the QIC stated that the Council should review ALJ Engelman's decision because the ALJ erred as a matter of law when he found that Medicare coverage existed for Ms. Born's dental services. R. at 29. On June 3, 2011, Ms. Born filed objections to the QIC's referral.[7] R. at 46-48. Ms. Born argued that the ALJ did not commit a clear error of law because he correctly found that the surgeries were performed to remedy a "congenital osteoporotic condition" and that the dental implants were not the purpose of the surgery. R. at 47.

On March 16, 2011, the Council reviewed the ALJ's decision on its own motion and, on July 22, 2011, issued an order reversing the ALJ. R. at 2-12. The Council concluded that mandible reconstruction and bone grafts are not covered under

---

[6] Under 42 C.F.R. § 405.1110(b), a QIC may refer an ALJ decision to the Council for review if the QIC believes that an ALJ decision contains an error of law material to the outcome of the claim.

[7] Ms. Born's objections were filed by the Medicare Rights Center, a national non-profit organization. R. at 46.

5

Medicare. R. at 7. The Council found that Ms. Born's surgeries did not fall within the narrow exception in MBPM Chap. 16, § 140, which allows for jaw reconstruction in preparation for cancer radiation treatments. R. at 7-8. In addition, the Council found that Ms. Born's surgeries were not covered under NCD Chap. 1, Part 4, § 260.6, which allows for oral examinations in preparation for a kidney transplant. R. at 8. After review of the medical evidence, the Council concluded that Ms. Born's medical records indicated that the mandible reconstruction and bone grafts were provided in connection with the treatment of her teeth or structures supporting her teeth and therefore were not covered under Medicare Part B. R. at 11. The Council also noted that, although the dental services had the collateral effect of improving Ms. Born's overall health, this alone was not sufficient to convert non-covered dental procedures into covered procedures. R. at 10. The Council's decision stands as the final decision of the Secretary. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

## II. ANALYSIS

### A. Standard of Review

Once the Secretary has rendered a final decision on a Medicare claim, judicial review of that decision is available in the same manner as provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act. *Heckler v. Ringer*, 466 U.S. 602, 605 (1984); 42 U.S.C. § 1395ff(b)(1)(A) (stating that "any individual dissatisfied with any initial determination under subsection (a)(1) of this section" is entitled to reconsideration, a hearing by the Secretary, and "to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g)").

Under § 405(g), review of the Secretary's finding that a claimant is not entitled to Medicare benefits is limited to whether the Secretary's finding is supported by substantial evidence. *Chipman v. Shalala*, 90 F.3d 421, 422 (10th Cir. 1996). The district court may not reverse the Secretary simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the Secretary was justified in her decision. *See Andrade v. Sec. of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Via Christi Reg'l Med. Center, Inc. v. Leavitt,* 509 F.3d 1259, 1271 (10th Cir. 2007)*.*

### B.   **The Medicare Program**

The Medicare statute, enacted in 1965, is a federal health insurance program primarily benefitting those 65 years of age or older. *See* Social Security Amendments of 1965, Pub. L. No. 89-97, 79 Stat. 286 (codified as amended at 42 U.S.C. §§ 1395 to 1395kkk-1). To be eligible, an individual must be (1) 65 years of age or older; (2) disabled and entitled to social security disability benefits; or (3) medically determined to have end stage renal (kidney) disease. 42 U.S.C. § 1395c. The Centers for Medicare and Medicaid Services ("CMS") is the agency within the Department of Health and Human Services charged with the administration of Medicare. *See Sw. Pharm. Solutions, Inc. v. Ctrs. for Medicare and Medicaid Servs.*, 718 F.3d 436, 439 (5th Cir. 2013). The Medicare program is divided into four major components – Parts A, B, C, and D. Part A of the program provides for hospital insurance services, including

inpatient hospital services, post-hospital extended care services, home health services, and hospice care. 42 U.S.C. § 1395d(a). Part B is a voluntary program that provides supplemental benefits to Medicare participants to cover the costs of, among other things, home health services, physician services, and outpatient physical therapy services. 42 U.S.C. § 1395k. Part C, the "Medicare + Choice" (M+C) program, allows eligible participants to opt out of the traditional Part A fee-for-service system and instead obtain various benefits through Medical Advantage Organizations, which receive a fixed payment from the United States for each enrollee. 42 U.S.C. §§ 1395w-21, w-29. Part D of the program provides a prescription drug benefit program. 42 U.S.C. §§ 1395w-101 *et seq*.

      This appeal concerns Medicare Part B. The central dispute between the parties is whether the Council's finding that Ms. Born's mandible reconstruction and bone grafts are not covered services under Medicare Part B is supported by substantial evidence. Ms. Born argues that she is entitled to coverage under Medicare Part B because her dental surgeries were "incident to and an integral part" of the treatment of her osteopenia. Docket No. 8 at 11. She contends that her surgeries were reasonably necessary to treat the "abnormality or malformation of her jaw caused by her osteopenic condition." *Id*. Moreover, she claims that the surgeries fall under the rare exception to the blanket denial of dental coverage under Medicare because they were not routine dental procedures. *Id*.

      The Secretary does not dispute the medical necessity of Ms. Born's dental services. Docket No. 11 at 10; *see Fournier v. Sebelius*, 839 F. Supp. 2d 1077, 1082 (D. Ariz. 2012) (noting that "Medicare excludes from coverage specific services,

including those related to dental care, regardless of whether those services are considered medically necessary") (citation omitted). Instead, the Secretary claims that the dental services Ms. Born received are not covered under Medicare Part B. *Id*.

In order to establish entitlement to Medicare coverage, a beneficiary must show that his or her medical procedures were (1) medically necessary and (2) fall within the coverage guidelines. *See Goodman v. Sullivan*, 891 F.2d 449, 451 (2d Cir. 1989) (noting that Medicare does not cover all medically necessary services); *Wood*, 246 F.3d at 1032 ("All medically necessary procedures are not covered under [Medicare]"). Medicare covers services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member" and are not excluded by any other provision of the Act. 42 U.S.C. § 1395y(a)(1)(A).

As a general rule, Medicare does not provide coverage for dental services. *See, e.g.,* 42 U.S.C. § 1395y(a)(12) (noting that "no payment may be made under part A or part B of [Medicare] for any expenses incurred for items or services . . . where such expenses are for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth"); 42 C.F.R. § 411.15(i) (noting that excluded services include "[d]ental services in connection with the care, treatment, filling, removal, or replacement of teeth, or structures directly supporting the teeth"). However, Medicare has exceptions to the general prohibition against coverage for dental services. Under the first exception, dental services provided in a hospital setting in connection with an "underlying medical condition" may be covered under Medicare Part A. 42 U.S.C. § 1395y(a)(12) (stating that "payment may be made under Part A of this subchapter in the case of inpatient hospital services in connection with the

provision of such dental services if the individual, because of his underlying medical condition and clinical status or because of the severity of the dental procedure, requires hospitalization in connection with the provision of such services"); *Chipman*, 90 F.3d at 422-23.  Under the second exception, beneficiaries may receive benefits for the "extraction of teeth to prepare the jaw for radiation treatments of neoplastic disease." CMS, Pub. 100-02, Chap. 16, § 140.  The third exception allows for the receipt of benefits for oral examinations performed in a hospital before a beneficiary undergoes surgery for a kidney transplant.  CMS, Pub. 100-03, Chap. 1, Part 4, § 260.6.  The fourth exception notes that Medicare coverage is available "[i]f an otherwise noncovered procedure or service is performed by a dentist as incident to and as an integral part of a covered procedure or service performed by the dentist."  CMS, Pub. 100-02, Chap. 15, § 150.  Because the Secretary does not dispute the medical necessity of Ms. Born's surgeries, the Court's analysis will focus on whether her dental services fall within Medicare Part B's coverage guidelines.

In this case, the Court finds that the Council's conclusion that Ms. Born's surgeries were not covered under Medicare Part B is supported by substantial evidence because the medical records establish that Ms. Born's procedures were performed in connection with the treatment of her teeth and teeth supporting structures.  *See, e.g.*, R. at 74 (Ms. McLaughlin describing her condition as "fully edentulous[8] in the maxilla and partially edentulous in the mandible"); R. at 102 (Dr. Masterson noting that surgery

---

[8]Edentulous means "without teeth; having lost some or all natural teeth."  R. at 11.

10

would improve Ms. Born's "occlusal function"[9]); R. at 126 (Dr. Nuray Bilir writing to Ms. Born: "I do understand that you would like to have a bone surgery in your jaw to be able to improve your chewing"); R. at 8-10 (listing additional opinions).  As such, Ms. Born's mandible reconstruction and bone grafts are not covered under Medicare Part B because they qualify as services performed in connection with the "care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth."  42 U.S.C. § 1395y(a)(12).  Because her dental services fall within the general exclusion to coverage, Ms. Born is not entitled to Medicare coverage unless she can show that an applicable exception to the general rule applies.

Ms. Born's dental services do not qualify for the exception available under NCD Chap. 1, Part 4, § 260.6 because her surgeries were not in preparation for a kidney transplant.  Similarly, Ms. Born cannot avail herself of the exception in MBPM Chap. 16, § 140 because her dental services were not in connection with radiation treatments.

Ms. Born argues that her surgeries are covered under MBPM Chap. 15, § 150 because her dental services were performed to "improve the functioning of a malformed body member," namely, her mandible.  42 U.S.C. § 1395y(a)(1)(A); see Docket No. 8 at 11.  Ms. Born claims that, because her mandible qualifies as a malformed member, her dental services are covered under the MBPM, which allows for Medicare coverage of an otherwise "noncovered procedure or service" performed by a dentist that is "incident to and [ ] an integral part of a covered procedure or service performed by the dentist."

---

[9]Occlusal means "pertaining to the contacting surfaces of opposing teeth or of opposing occlusion rims, or to the masticating surfaces of the premolar and molar teeth."  R. at 11.

11

CMS, MBPM Chap. 15, § 150.  Although Ms. Born's deteriorating mandible may qualify as a malformed body member, because surgery reconstructing the mandible is expressly excluded under the Act as "care, treatment, filling, removal, or replacement of teeth or *structures directly* supporting teeth," Ms. Born is not entitled to the costs associated with her dental services under Medicare Part B.  42 U.S.C. § 1395y(a)(12) (emphasis added).  As the Council accurately noted, Medicare unambiguously "exclud[es] from [ ] coverage *all items or services* provided in connection with a beneficiary's teeth or their supporting structures."  R. at 10 (emphasis added).  Thus, because reconstruction of the mandible is not a "covered procedure," Ms. Born's reliance on MBPM Chap. 15, § 150 is misplaced.[10]

To the extent Ms. Born argues that her dental services were necessary to treat her underlying medical condition and, therefore, are covered under Medicare Part B, the Court disagrees.  As noted by the Tenth Circuit in *Chipman*, the "underlying medical condition" exception is only available under Medicare Part A.  90 F.3d at 422-23.  Because Ms. Born raises her coverage claim under Medicare Part B, the exception available for an underlying medical condition under Medicare Part A is inapplicable.  42 U.S.C. § 1395y(a)(12); 42 C.F.R. § 411.15(i).

---

[10]The Court notes that there is some ambiguity with respect to Ms. Born's arguments.  Under the MBPM, the phrase "incident to and as an integral part of" refers to a "noncovered procedure or service" performed by a dentist.  CMS, MBPM, Chap. 15, § 150.  However, Ms. Born's argument appears to conflate a "covered procedure" with a qualifying "underlying condition" as she argues the services she received were integral to the treatment of her osteopenia.  *See, e.g.,* Docket No. 8 at 11 ("dental surgery *was* to treat the abnormality or malformation of her jaw").  However, under the MBPM, the focus is not on the condition that will be treated, but whether a noncovered procedure is performed in connection with a covered procedure.  Here, Ms. Born does not identify a covered procedure performed in connection with her dental surgeries.

Next, Ms. Born asserts that she is entitled to coverage for her dental services because this case is analogous to *Maggio v. Shalala*, 40 F. Supp. 2d 137 (W.D.N.Y. 1999), where the court found that dental services that provided a plaintiff with crowns to stabilize a maxillary prosthesis were covered under Medicare Part B. Ms. Born's reliance on *Maggio*, however, is misplaced. First, that case relied on the "underlying medical condition" exception to find that the plaintiff was entitled to coverage for dental services under Medicare Part B. 40 F. Supp. 2d at 142. As noted above, this interpretation of the Act was rejected by the Tenth Circuit in *Chipman*. 90 F.3d at 422-23. Second, the court in *Maggio* found that the plaintiff's dental services were covered under Medicare Part B because the services were related to the plaintiff's cancer treatment, provided in a hospital (albeit an outpatient basis), and performed by the hospital's cancer dental surgeon on the recommendation of the plaintiff's oncologist. 40 F. Supp. 2d at 142. By contrast here, Ms. Born's dental services were not related to cancer treatment and were not performed in a hospital setting. Thus, because *Maggio* conflicts with binding Tenth Circuit precedent and is not factually analogous, it does not support Ms. Born's arguments.

Finally, Ms. Born argues that her dental services should be covered because they were not the sort of "routine dental care that is excluded from coverage" under Medicare. Docket No. 8 at 11. This argument appears to challenge the Secretary's interpretation that the statute unambiguously excludes from coverage all items and services provided in connection with a beneficiary's teeth or their supporting structure. R. at 10; 42 U.S.C. § 1395y(a)(12). Ms. Born, however, provides no support for the argument that non-routine treatments – not identified in the aforementioned exceptions

– are excluded from Medicare's general prohibition for coverage of dental services. Because neither the Act, the regulations implementing the Act, nor the Secretary's manuals state that non-routine dental services similar to those Ms. Born received are covered under Medicare Part B, the Court finds this argument unconvincing.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984) (noting that an agency interpretation of its enacting statute will be afforded deference if it is reasonable); *Wood*, 246 F.3d at 1035 (noting that the Medicare Act is "clear, with clear exceptions, and an argument based only on the rationale supporting the exceptions, absent some constitutional argument, cannot prevail").  Accordingly, the Court concludes that the administrative record contains substantial evidence to support the Council's conclusion that Ms. Born's mandible reconstruction and bone grafts were excluded from coverage under Medicare Part B.  *Wood*, 246 F.3d at 1035.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Secretary that plaintiff is not entitled to benefits under Medicare Part B is **AFFIRMED**.

DATED September 24, 2013.

                                        BY THE COURT:

                                        s/Philip A. Brimmer
                                        PHILIP A. BRIMMER
                                        United States District Judge